**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**CECIL M. MILLER**                                                    **PETITIONER**

v.                   **CIVIL NO.**       **3:09-CV-3012-JRM**

**MICHAEL J. ASTRUE, Commissioner**
**Social Security Administration**                                            **RESPONDENT**

**MEMORANDUM OPINION**

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423.

**I.**      **Procedural Background:**

Plaintiff protectively filed a DIB application on July 18, 2006, alleging an inability to work since June 1, 2004 (Tr. 13-14). Plaintiff's application was denied initially and on reconsideration (Tr. 75-76). Pursuant to Plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on June 4, 2008, at which Plaintiff, represented by counsel, appeared and testified (Tr. 7-58). The ALJ issued an unfavorable decision on September 24, 2008, finding that Plaintiff was not disabled within the meaning of the Act (Tr. 67, Decision). Plaintiff requested a review on the record on October 1, 2008 (Tr. 68-71). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 5, 2009 (Tr. 3-6).

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve

consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Applicable Facts

The Plaintiff is a 63 year old man with a 12th grade education and some college. (Tr. 648). The Plaintiff worked for a number of years as a police officer in the drug unit in Lake City, Florida. (Tr. 17-18, 149). The occupation of police officer is classified as very heavy in the DOT code (Tr. 24), and the work, consisting of three consecutive twelve hour shifts followed by three such time periods off (Tr. 21). The Plaintiff subsequently took a security guard position with White Springs Agricultural Chemicals which only required him to patrol certain areas and make sure individuals on the premises had the proper identification. (Tr. 18-19). This position was classified as light duty by the VE. (Tr. 48).

In November or December of 1998 the Plaintiff quit his job as a security guard and moved to a cabin on 160 acres in Arkansas that he and his ex-father-in-law own. (Tr. 33-35).

The Plaintiff has no substantial medical history until he presented to the VA clinic on February 2, 2006 when he complained of chronic arm and back pain as a result of chopping wood. (Tr. 649-651). On March 16, 2006 the Plaintiff was diagnosed with Osteoarthrosis, Inquinal hernia, Tobacco Use and Backache. The Plaintiff was counseled to stop smoking and scheduled for hernia repair. (Tr. 645). The hernia was repaired on May 26, 2006 at the VA hospital. (Tr. 618-639).

On May 22, 2006 the Plaintiff was seen by Dr. Kuo for a mental health evaluation and his chief complaint was that the Plaintiff was not sleeping. The Plaintiff related that he severed two years in the military and was in Germany when he received a hardship discharge because his father had died. The Plaintiff stated that he was awakened by "crazy dreams" which often times are "apocalyptic in nature." (Tr. 622). Dr. Kuo noted that the Plaintiff had no symptoms of panic attacks, anxiety, social phobia, or PTSD. He also noted that there was no history of head injury with loss of consciousness. (Tr. 623). The Plaintiff was diagnosed with a depressive disorder not otherwise specified and had a GAF of 45. Dr. Kuo prescribed mirtazapine (anti-depresant)15 mg.

On August 9, 2006 in a followup visit with Dr. Kuo the Plaintiff noted that the mirtazapine had allowed him to sleep better but he was still jittery. (Tr. 605).

The Plaintiff was seen for a neuropsychological evaluation by Dr. Vann Smith on October 2, 2006. Dr. Smith diagnosed the Plaintiff with a cognitive dysfunction, non-psychotic and mood disorder. (Tr. 199-202). Dr. Smith also performed a Mental Residual Functional Capacity evaluation on the Plaintiff and opined that based on Plaintiff's history in combination with the findings of his mental status examination and neuropsychodiagnostic test, Plaintiff's impaired memory, impaired attention, sleep pattern disturbance, and "etc.," would "interfere with the

patient's ability to carry out routine daily activities in a consistent manner" (Tr. 201).

Dr. Smith stated that the Plaintiff was, "in my clinical opinion, **disabled at this time**" (Tr. 201) (emphasisadded).

The Plaintiff was seen in the VA clinic on October 11, 2006 for a "follow-up for symptoms of depression" (Tr. 605) and the diagnostic impression was depressive disorder, not otherwise specified, chronic back pain, hypertension and hypercholesterolemis. The Plaintiff's GAF was noted at 45. The Plaintiff was provided with medication and a mental treatment plan. (Tr. 607).

On November 5, 2006 the Plaintiff presented to the Baxter Regional Medical Center with complaints of chest discomfort. He underwent a left heart catheterization and a successful angioplasty was performed. (Tr. 259). At the time of his heart surgery the Plaintiff was not exhibiting any depression or suicidal ideation. (Tr. 261).

The Plaintiff had a colonoscopy performed at the VA on November 28, 2006 (Tr. 592) and he was again counseled to stop smoking on December 6, 2006. (Tr. 589).

On May 17, 2007 the Plaintiff underwent a colonic polyp removal and tolerated the surgery well. (Tr. 515-516).

On August 7, 2007 the Plaintiff saw Dr. Kuo again stating that he was having a difficult time because his wife left him and "cleaned out the bank accounts". (Tr. 506). Dr. Kuo added Diazepam 10 mg to the Plaintiff's medication list. (Tr. 507). The Plaintiff was diagnosed with depressive disorder not otherwise specified, chronic back pain, hypertension, hypercholesterolemia and a GAF of 41. (Tr. 508).

On August 28, 2007 Dr. Kuo wrote a letter stating that the Plaintiff "ability to maintain

employment and remain productive has declined and that the Plaintiff did have several chronic medical and psychiatric conditions that have interacted with severe psychosocial stressors which have really negatively impacted his quality of life currently. (Tr. 210).

On September 17, 2007 the Plaintiff stated that he was sleeping ok. (Tr. 499). On April 22, 2008 the Plaintiff acknowledged that his medications were helpful. (Tr. 476). On October 31, 2008 the Plaintiff suffered a right distal radius fracture (Tr. 348) as a result of a fall. (Tr. 461).

## IV.     Discussion:

The ALJ found that the claimant met the insured status requirements of the Social Security Act through June 30, 2004, that he had not engaged in substantial gainful activity since June 1, 2004 and that the claimant had the following severe combination of impairments: major depressive disorder, chronic ischemic heart disease, hypertension, hyperlipidermia, chronic low back pain and degenerative joint disease. (Tr. 64).

After consideration of all the evidence of record, the ALJ found that Plaintiff was not disabled within the meaning of the Act at any time through the date of his decision (Tr. 67, Finding 7). Specifically, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work (Tr. 65, Finding 5). After receiving testimony from a vocational expert, the ALJ determined that Plaintiff's past relevant work as a security guard was consistent with Plaintiff's RFC (Tr. 67, Finding 6).

To establish entitlement to benefits, Plaintiff has to prove that he was disabled prior to the expiration of his insured status which occurred on June 30, 2004 (Tr. 62). See 20 C.F.R. § 404.131(b) (2008). *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (finding that plaintiff must

establish that she was disabled before expiration of her insured status); and see 20 C.F.R. §§ 404.315, 404.320. Disability is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for at least 12 months. See 20 C.F.R. § 404.1505.

The claimant has "the burden ... of showing ... that [s]he has a medically severe impairment or combination of impairments, and ... that the impairment prevents [her] from performing [her] past work." *Bowen v. Yuckert*, 482 U.S. at 146 n. 5, 107 S.Ct. at 2294 n. 5; see also 20 C.F.R. § 404.1512(a). Only if the "sequential evaluation process proceeds to the [last] step" does the government bear the burden of showing that "the claimant is able to perform work available in the national economy.... If the process ends at [an earlier step], the burden of proof never shifts" to the government. *Bowen v. Yuckert*, 482 U.S. at 146-47 n. 5, 107 S.Ct. at 2294 n. 5. Brown v. Shalala 15 F.3d 97, 99 (C.A.8 (Minn.),1994)

The Eighth Circuit has consistently held that a claimant must have some medical evidence as proof of a disabling impairment. *See Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Brown v. Shalala*, 15 F.3d 97, 99-100 (8th Cir. 1994); *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992). In the instant case, Plaintiff simply did not seek medical or mental health treatment for his alleged impairments until February 2, 2006, when it appears that he injured himself chopping wood. (Tr. 651). The lack of medical care contradicts Plaintiff's alleged disability. *Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (holding that the ALJ properly considered that the plaintiff lacked consistent medical care, did not receive medical treatment from 1995 to 1999, and received only sporadic attention thereafter).

A diagnosis of a claimant's condition may properly be made even several years after the

actual onset of the impairment. *Berven v. Gardner*, 414 F.2d 857, 861 (8th Cir. 1969); *Murphy v. Gardner*, 379 F.2d 1, 7 (8th Cir. 1967). In the above cases, however, the plaintiffs' attending physicians testified that the plaintiff's conditions (heart desease and cancer) were gradual process which began before the expiration of eligibility.

A defect, however, does not cease to exist merely because it is difficult to prove. *See, e.g., Bramlett v. Ribicoff*, 298 F.2d 858 (4th Cir. 1962). Nor is the disability contemplated by the Act restricted to that which is subject of proof of laboratory findings. *Page v. Celebrezze*, 311 F.2d 757 (5th Cir. 1963); *Hayes v. Celebrezze*, 311 F.2d 648 (5th Cir. 1963). There is no indication in the medical record that any of Plaintiff's treating physicians diagnosed Plaintiff as having disabling symptoms associated with impairments that were retroactive on, or prior to, the date Plaintiff was last insured (Tr. 209-210, 211-684). The fact that there is no medical evidence in the record of any depression prior to the expiration of the insured status is a factor for the ALJ to consider.

The Plaintiff first presented in the VA on February 2, 2006 because he had hurt himself chopping wood.(Tr. 651). After examining Plaintiff, VA staff physicians diagnosed him with a right inguinal hernia, and attempted to schedule him for surgery (Tr. 649). Plaintiff explained that he was going out of town for two months and postponed repair of the hernia until he returned, which apparently was in May 2006, when VA staff physicians repaired the hernia (Tr. 651, 671). The VA, as a standard review, performed a two question depression screen and the Plaintiff was positive. (Tr. 653). This is the first medical report of any indication of depression.

The Plaintiff testified that at some point after he moved back to Arkansas he drove to Florida to see his grandchild, children and friends. (Tr. 38-40). *See Pirtle v. Astrue*, 479 F.3d

931, 935 (8th Cir. 2007) (holding the plaintiff's activities did not support claims of disability when the plaintiff drove a manual-transmission vehicle, shopped, performed housework such as cooking, cleaning, and washing dishes, fished, attended church two to three times per week, cared for her personal needs, and home-schooled two children).

The Plaintiff saw Dr. Kuo with the VA on May 22, 2006 for a mental health evaluation. Dr. Kuo noted that the Plaintiff had no symptoms of panic attacks, anxiety, social phobia, or PTSD. He also noted that there was no history of head injury with loss of consciousness. (Tr. 623). The Plaintiff was diagnosed with a depressive disorder not otherwise specified, chronic back pain, hypertension, hypercholesterolemia and had a GAF of 45. (Tr. 626). Dr. Kuo prescribed mirtazapine (anti-depresant)15 mg.

On August 9, 2006 in a followup visit with Dr. Kuo the Plaintiff noted that the mirtazapine had allowed him to sleep better but he was still jittery. (Tr. 605).

The record contains substantial evidence that Plaintiff has sufficient mental function prior to June 30, 2004 to perform the mild work (security guard) that the Plaintiff was performing prior to his move to Arkansas. The Plaintiff lived in a remote cabin on 160 acres in Arkansas and he took care of himself from 1999 until 2006. The Plaintiff drove to Florida and back to see his family and friends and during that trip he met a woman that he worked with in the past and developed a relationship with her. They ultimately married in 2006.

The Plaintiff never sought treatment for any mental problems prior to 2006. *See Shannon v. Charter*, 54 F.3d 484 at 486 ("While not dispositive, a failure to seek a treatment may indicate the relative seriousness of a medical problem"). *Page v. Astrue* 484 F.3d 1040, 1044 (C.A.8 (Ark.),2007) Based on the medical opinions and record evidence and the fact that the records

contains no medical evidence prior to the expiration of the Plaintiff's insured status, the ALJ's conclusion that Plaintiff's mental-emotional nature was non-severe prior to June 2004 is supported by substantial evidence. *See Rasmussen v. Shalala*, 16 F. 3d 1228 (C.A. 8 (Iowa), 1994).

On October 2, 2006, Dr. Smith examined Plaintiff, and reported that Plaintiff was adequately nourished, appropriately groomed, alert, cooperative, and appeared to be his stated age (Tr. 199). Under mental status the doctor described Plaintiff's responses as informative without evidence of associational anomaly; having no evidence of hallucination or delusion; showing a slow hesitant gait; and showing a native intelligence estimated to fall within normal to bright range (Tr. 199-200). Dr. Smith reported that Plaintiff's I.Q. scores included a Verbal I.Q. score of 109, Performance I.Q. score of 114, and a Full Scale I.Q. score of 112, which placed him in the normal range of intelligence (Tr. 200).

Dr. Smith opined that based on Plaintiff's history in combination with the findings of his mental status examination and neuropsychodiagnostic test, Plaintiff's impaired memory, impaired attention, sleep pattern disturbance, and "etc.," would "interfere with the patient's ability to carry out routine daily activities in a consistent manner" (Tr. 201).

Dr. Smith stated that Plaintiff was "in my clinical opinion, disabled at this time" (Tr. 201) (emphasis added). Dr. Smith examined Plaintiff two-and-one-half years after Plaintiff's insured status expired. Dr. Smith opined that Plaintiff had disabling impairments as of the date of his examination, and made no attempt to offer a retrospective diagnosis of Plaintiff's impairments (Tr. 201-202, 208). The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589

(8th Cir.1998), *Jenkins v. Apfel* 196 F.3d 922, 924 -925 (C.A.8 (Mo.),1999).

Opinions may be properly discounted when a claimant presented to the consulting doctor in order to obtain benefits, and not for treatment. *Hibshman v. Astrue*, 2008 WL 94743, *6 (E.D.Ark.) (holding that the ALJ properly discounted the opinions of Vann Arthur Smith, Ph.D., given that he examined the plaintiff one time in order to support the plaintiff's pursuit of Social Security claim, and not for treatment), citing *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995) (holding that medical opinions may be discounted when the plaintiff's encounters with doctors in question appear to be linked primarily to his quest to obtain benefits, rather than to obtain medical treatment). Dr. Smith diagnosis is also suspect because it is base only upon the clinical history "as obtained from the " Plaintiff. (Tr. 199). The Plaintiff related to Dr. Smith that his history was "positive for multiple closed head injuries". (Tr. 199). When the Plaintiff was seen by Dr. Kuo with the VA on May 22, 2006 he indicated that he had never had a head injury with loss of consciousness. (Tr. 623). The ALJ was correct to give no weight to Dr. Smith's evaluation.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting

from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the ALJ found that prior to Plaintiff's date last insured, Plaintiff retained the ability to perform light work (Tr. 65, Finding 5). The medical evidence of record included progress notes, treatment records, and psychological evaluations, for a treating period of over four years, and there is no indication that any of Plaintiff's physicians restricted his functional activities. The absence of restrictions further contradicted Plaintiff's alleged limitations. *Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994) (finding lack of medical evidence is a factor to consider when ALJ evaluates the credibility of claims of disabling impairments).

The Plaintiff acknowledged that in 1997 he was working for the Lake City Florida police department and as a security guard. (Tr. 18). As a security officer he had to walk the perimeter, guard the gate, get in and out of the vehicle and interacting with people. In 1998 the plaintiff only worked as a security guard and had quit the job as a police officer. (Tr. 19). The VE testified that the job as a police officer would be classified as heavy work (Tr. 47) while the job as security guard would be classified a light work. (Tr. 48).

The Plaintiff stated that he left the police department because he could not trust the guys

around him and because his back was bothering him. He stated that he left the security job because he "had this place up here in Arkansas so I just decided just the heck with everything and come up here". (Tr. 26). The Plaintiff claimed that his back always hurt since an automobile accident which occurred in the 70s. (Tr. 27-28). It does not appear that the Plaintiff every obtained treatment for his back since there is no medical evidence in the record. As previously stated the Plaintiff sought no treatment until he injured himself while chopping wood when he went to the local VA hospital. (Tr. 651).

In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). This finding, as well as the ALJ's evaluation of the record, is "some medical evidence," *Lauer v. Apfel*, 245 F.3d 700 at 703-04, and provides substantial evidence supporting the ALJ's RFC determination. Therefore, this Court finds the ALJ's RFC determination is supported by substantial evidence and should be affirmed. *May v. Astrue*, 2010 WL 143688, 4 (W.D.Ark.) (W.D.Ark.,2010).

In finding plaintiff able to perform the duties of security guard the ALJ considered plaintiff's subjective complaints and the medical records of his treating physicians. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on his activities during the relevant time period that would preclude a significant range of light work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC

determination

Finally, the court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, the court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing his duties as a security officer during the relevant time. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 27th day of January 2010.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES DISTRICT JUDGE